UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 16-CV-23945-KMW

DEVIN CARAZA,

      Plaintiff,

v.

FLORIDA POWER & LIGHT COMPANY,
and BRIAN STAMP,

      Defendants.

_____/

## ORDER

**THIS MATTER** is before the Court on Defendants' joint motion to dismiss Plaintiff's Amended Complaint (DE 27), to which Plaintiff filed a response in opposition (DE 31), and Defendants filed a reply. (DE 32.)  For the reasons below, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND[1]

Plaintiff, a Cuban-American citizen, began working at Defendant Florida Power & Light Company ("FPL") in January 2006.  (DE 23 ¶¶ 1, 7.)  Although he briefly worked for the Federal Aviation Administration between 2007-2008, he returned to FPL and eventually rose to the level of licensed nuclear reactor operator at FPL's Turkey Point Nuclear Reactor Plant ("Turkey Point" or the "Plant") in Miami-Dade County, Florida. (*Id.* ¶¶ 2, 7.) After becoming certified as a nuclear reactor operator in March 2015, Plaintiff came under the supervision of Turkey Point's Operations Manager, Defendant Brian

---

[1] The Court accepts Plaintiff's allegations as true for purposes of this motion to dismiss. *See Speaker v. U.S. Dept. of Health and Human Servs. Ctrs. Disease Control and Prevention,* 623 F.3d 1371, 1379 (11th Cir. 2010).

Stamp.  (*Id.* ¶¶ 3, 9.)  Plaintiff alleges that Stamp and FPL discriminated against him on the basis of his race from March 2015 until his termination on February 9, 2016.

In support of his discrimination claims, Plaintiff alleges that in April 2015 he and another employee, Tony Honaker, were involved in a "Human Performance Event" that resulted in the two of them being served a Record of Discipline ("ROD"). (*Id.* ¶ 10.) Plaintiff further alleges that after this incident, Stamp said to both Plaintiff and Honaker that "if I had 40 operators, I would have taken the liberty to fire you." (*Id.* ¶ 11.) Plaintiff claims this disciplinary action was discriminatory because "many other, more severe, Human Performance events have occurred" involving non-Latin FPL employees at the Plant, yet "no discipline has been handed out." (*Id.* ¶ 13.)  Plaintiff identifies two non-Latin employees who "had an event that violated technical specifications similar to Plaintiff's April 2015 incident, and they did not receive any letters in their file(s)." (*Id.* ¶ 25.)  Plaintiff also alleges that two other non-Latin employees "adjusted controllers for important pieces of equipment and left them out of position," which constituted "violat[ions] of technical specifications," but they were also never disciplined.  (*Id.*) Plaintiff further alleges that other employees at Turkey Point were accused of theft and driving under the influence of alcohol and leaving the scene of an accident, but were not terminated (although they lost their plant access).  (*Id.*)

In addition to alleging that other employees were not similarly disciplined for their violations of technical specifications and wrongful conduct, Plaintiff also claims that his requests for a shift transfer and vacation days were denied, while "multiple similarly-situated operators ha[d] like requests granted." (*Id.* ¶ 14, 25.)

Finally, Plaintiff alleges that on December 30, 2015, he was accused of altering answers on his Nuclear Regulatory Commission (NRC) Operations Requalification Exam, which nuclear operators must pass to maintain their certifications.  (*Id.* ¶¶ 15, 41.)  Plaintiff asserts that Stamp led FPL's investigation into the incident, even though Plaintiff informed FPL that he and Stamp had "prior enmity." (*Id.* ¶ 16.) On January 21, 2016, in connection with the investigation, Plaintiff was denied access to any NextEra Energy/FPL nuclear power plant for his "deliberate misconduct" as defined in the NRC's regulations (10 C.F.R. 50.5).  (*Id.* ¶ 20.)  Plaintiff appealed this denial of access, but the appeal was denied on February 18, 2016. (*Id.*)

On January 25, 2016, Plaintiff requested to discuss the allegations and ongoing investigation with an HR Panel. (*Id.* ¶ 21.)  Plaintiff was not contacted by FPL until he was instructed to appear at Turkey Point on February 9, 2016.  (*Id.* ¶ 21.) When Plaintiff arrived on February 9, Stamp informed him that he had been terminated. (*Id.* ¶ 22.)

Attached to Plaintiff's Amended Complaint is a January 21, 2016 correspondence from David J. Bonthron at FPL (position unclear) to "File," regarding the investigation into Plaintiff's exam falsification.[2]  (DE 23-4.)  This correspondence demonstrates a detailed and comprehensive investigation into the incident involving approximately ten witness interviews.  (*Id.*)  The investigation concluded that Plaintiff falsified his exam results.  (*Id.*) Also attached to Plaintiff's Amended Complaint is a January 25, 2016 letter from Plaintiff to FPL regarding the investigation.  (DE 23-3.)  Plaintiff's letter concedes

---

[2] In addressing a Rule 12(b)(6) motion, the Court may consider documents attached to the complaint as exhibits and incorporated by reference therein. See *e.g., Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

that his test was altered, and provides a protracted explanation as to why someone else must have done it. (*Id.*)

To further support his race discrimination claim, Plaintiff alleges "Mr. Tim Jones (non-Latin or Cuban American), Shift Manager, (important position) failed his exam the same day Plaintiff did.  Mr. Jones was allowed to retake the exam and subsequently failed again.  The following week, once a team of regulatory inspectors had left Turkey Point, Mr. Jones exam was re-graded and he was given a passing score." (*Id.* ¶ 25.) Plaintiff alleges that "similar events happened to other operators," wherein they "failed their initial exams but adjustments were made to allow them to pass." (*Id.*)

Plaintiff submitted a Charge of Discrimination to the Miami District Office of the Equal Employment Opportunity Commission on June 10, 2016.[3]   (DE 27-1.)  In the Charge, Plaintiff stated that "I am a qualified Hispanic individual," and "[a]fter a work place incident lead [sic] to discipline, I have been subjected to harassment and retaliation by Mr. Brian Stamp." (*Id.*)  Plaintiff then states that the "harassment and retaliation lead to a false allegation of cheating during my 2015 reactor operator requalification exam. Due to this unjust allegation I was terminated." (*Id.*)  Plaintiff's Charge concludes by stating that he was discriminated and retaliated against because of his "national origin (Hispanic)." (*Id.*)   Plaintiff did not check the box for "race" discrimination. (*Id.*)

The EEOC sent Plaintiff a Dismissal and Notice of Rights on June 15, 2016, stating that "[b]ased upon its investigation, the EEOC is unable to conclude that the

---

[3] Also attached to Plaintiff's Amended Complaint is an EEOC intake questionnaire containing a lengthy discussion of the alleged acts of discrimination.  The questionnaire is unsigned and undated.  (DE 23-1.)

4

information obtained establishes violations of the statutes," and allowing Plaintiff to file a lawsuit based on the information in the Charge.  (DE 23-2.)

Plaintiff's Amended Complaint[4]   asserts the following claims: (1) race discrimination in violation of 42 U.S.C. § 1981 against FPL and Stamp; (2) race discrimination in violation of 42 U.S.C. § 2000e (Title VII of the Civil Rights Act) against FPL; and (3) violation of the Florida Civil Rights Act (Fla. Stat. § 760.10(5) "FCRA") against FPL and Stamp based on their  discrimination "against Plaintiff in his attempt to maintain his certification as licensed nuclear reactor operator[.]" Defendants have moved to dismiss all counts.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court's consideration is limited to the allegations in the complaint and any relevant exhibits attached to the complaint. *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004); *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the

---

[4] Plaintiff filed his original complaint on September 14, 2016.  (DE 1.) In response to Defendants' motion to dismiss the original complaint, Plaintiff filed a motion to amend his complaint (DE 14) and a proposed amended complaint (DE 13.)  Defendants opposed Plaintiff's motion to amend because Plaintiff had failed to comply with Local Rule 7.1 and Rule 15.  The Court agreed with Defendants that Plaintiff had failed to comply with the Local Rules, but allowed him to file the amended complaint. (DE 22.) The Court's Order warned Plaintiff that failure to comply with the Local Rules would "result in sanctions, including attorneys' fees and denial of his motions, going forward in this case." (*Id.*)

Plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

A pleading must contain a "plain statement of the claim showing the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-678 (quoting Fed. R. Civ. P. 8(a)(2)). This plain statement does not require "detailed factual allegations," but a mere "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Rule 12(b)(6) does not allow for dismissal of a complaint merely because the Court anticipates that "actual proof of those facts is improbable," but the "allegations must be enough to raise a right to relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

## III.   ANALYSIS

Defendants advance three primary[5] arguments in favor of dismissal.  First, they argue that pleading "errors"—including referencing the wrong statutes supporting the causes of action and incorporating allegations from prior counts into subsequent counts—require dismissal of the Amended Complaint without prejudice.   Second, Defendants argue that Count II and III should be dismissed with prejudice because Plaintiff failed to exhaust administrative remedies.   Third, Defendants argue that all three counts must be dismissed to the extent they are based on the April 2015 ROD because this written discipline was not an "adverse employment" action.

---

[5] Defendants argue—and Plaintiff agrees (DE 31 ¶ 27)—that Plaintiff's claim for punitive damages should be dismissed.  Accordingly, Plaintiff's claim for punitive damages is dismissed without prejudice.

### A.     Pleading Defects

Defendants initially argue that the Amended Complaint contains pleading errors that warrant dismissal without prejudice.  The Court agrees.

Plaintiff's Amended Complaint includes citations to statutes and other authority that are unrelated to the case.  For instance, Paragraph 25(f) within Count I—asserting race discrimination against FPL and Stamp under 42 U.S.C. §1981—alleges that Defendants' conduct "constitutes unlawful discrimination based on race and retaliation in violation of 42 U.S.C. § 1981 *and the Florida Civil Rights Act codified as Fla. Stat. § 760.10(5)*. Pursuant to *42 U.S.C. § 1983* Plaintiff is entitled to declaratory and injunctive relief against all Defendants and compensatory and punitive damages against Defendant Stamp." (DE 23 ¶ 25(f).) (emphasis added)  The references to the FCRA and 42 U.S.C. § 1983 are erroneous and confusing because Count I asserts only a claim for race discrimination under 42 U.S.C. § 1981.   Plaintiff again mistakenly references 42 U.S.C. § 1983 in the wherefore clause (Paragraph 28) of Count I.

Plaintiff admits to these errors but argues that they are immaterial and should simply be stricken, rather than requiring Plaintiff to re-plead.  But the Court agrees with Defendants that the errors substantively change the causes of action and relief sought in the Amended Complaint.  This is especially so because the paragraphs in Count I containing the errant citations are incorporated into Plaintiff's two subsequent counts. The errors therefore permeate the entire Amended Complaint and require Plaintiff to re-plead.[6]

---

[6] If Plaintiff amends his complaint, he must correct two other errors.  First, as Plaintiff concedes, his jurisdictional allegations contain multiple references to statutes that have nothing to do with the Court's jurisdiction in this case.  (DE 23 ¶ 4).  Second, Plaintiff's

7

Defendant next argues that the Amended Complaint should be dismissed as a "shotgun pleading" because Counts II and III re-allege and incorporate all but two of the paragraphs in Count I.   In particular, Paragraph 25 within Count I contains six sub-paragraphs and includes allegations against FPL and Stamp regarding different forms of alleged discrimination and disparate treatment against Plaintiff.

The allegations in a complaint "must be simple, concise, and direct," Fed. R. Civ. P. 8(d)(1), and the complaint must "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances," Fed. R. Civ. P. 10(b). "A 'shotgun pleading'—one in which 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief'—does not comply with the standards of Rules 8(a) and 10(b)." *P&M Corp. Fin., LLC v. Law Offices of David J. Stern, P.A.*, No. 0:15-CV-60736-KMM, 2016 WL 1045826, at *2 (S.D. Fla. Mar. 16, 2016) (quoting *Anderson v. Dist. Bd. of Trs. of Ctr. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). "It forces the district court to sift through the facts presented and decide for itself which are material to the particular claims asserted." *Id.* (citing *Anderson*, 77 F.3d at 366). "[T]he Eleventh Circuit recently reaffirmed its 'thirty-year salvo of criticism aimed at shotgun pleadings,' explaining that '[t]he most common type [of shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive

---

Amended Complaint states that the EEOC Charge is attached as Exhibit A, but that is not true.   Exhibit A is the unsigned, undated EEOC intake questionnaire, and the Charge is not included as an exhibit to the Amended Complaint.   This error is particularly troublesome because Plaintiff made a similar mistake in his original complaint, which Defendants noted in their first motion to dismiss.   (DE 9 FN 1.) Instead of correcting the error in the Amended Complaint, Plaintiff again failed to attach the Charge even though it is cited as an exhibit.   Defendants received a copy of the Charge only after submitting a public records request.

count to carry all that came before and the last count to be a combination of the entire complaint.'" *Id.* (alterations omitted) (quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320–21 (11th Cir. 2015)).  This kind of shotgun pleading fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

Plaintiff's Amended Complaint is a "shotgun pleading" that violates Rules 8(a) and 10(b). Although re-alleging and incorporating allegations from one count into subsequent counts does not automatically render a complaint defective, here Plaintiff's shotgun pleading causes significant confusion regarding which allegations support Count III. For instance, Paragraph 25 within Count I contains allegations against FPL and Stamp regarding Plaintiff's co-workers receiving disparate disciplinary treatment for violations of FPL's rules and technical specifications. (DE 23 ¶ 25(a)-(b), (e)-(f).) These allegations are currently part of Plaintiff's FCRA claim (Count III), which alleges discrimination against Plaintiff in maintaining his nuclear operator license.  But the race discrimination and occupational discrimination claims are necessarily distinct and involve different underlying facts.   Accordingly, Plaintiff's Amended Complaint is dismissed without prejudice for Plaintiff to re-plead his causes of action in a manner that complies with Rules 8 and 10.

**B.     Failure to Exhaust Administrative Remedies**

Defendants also assert that Counts 2 and 3 should be dismissed because the Plaintiff failed to exhaust administrative remedies. Defendants argue that Plaintiff's claims in this lawsuit differ from those he raised in his EEOC Charge. Specifically, Defendants argue that Plaintiff pursued a charge based on "national origin" before the

EEOC, yet he has instead alleged racial discrimination in his complaint. (DE 27 at 8.) Defendants also argue that Plaintiff failed to mention that he was discriminated against while taking an examination related to a license or other credential, a requirement of Fla. Stat. § 760.10(5). (DE 27 at 10.) Plaintiff counters that these allegations can be inferred from his Charge of Discrimination (DE 27-1) and Intake Questionnaire (DE 23-1) filed with the EEOC.

Before instituting a Title VII action in federal court, a plaintiff "must file an EEOC complaint against the discriminating party and receive statutory notice from the EEOC of his or her right to sue the respondent named in the charge." *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1567 (11th Cir. 1996). Merely receiving this right-to-sue letter, however, is no guarantee that the exhaustion requirement will be satisfied. *Id.* at 1570. A Title VII action can be based on "any kind of discrimination like or related to the charge's allegations." *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000).

The Court finds that Plaintiff has exhausted his administrative remedies with regards to both Title VII and the FCRA.[7] As to Count II alleging race discrimination under Title VII, Plaintiff states in his EEOC Charge that he is Hispanic, and alleges discrimination based on "National Origin" rather than a "Race." (DE 27-1.) The EEOC could "reasonably be expected" to investigate the racial discrimination claim asserted here because such a claim could "[grow] out of, the allegations contained in [the] EEOC charge." *Rodriguez v. Sec'y of the Dep't of Veterans Affairs*, 605 F. App'x 957, 958

---

[7] The Court applies the same pleading standard and requirements when analyzing a claim under Title VII as it does for the Florida Civil Rights Act. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

(11th Cir. 2015). Plaintiff would not be alleging any new or different acts of discrimination had he selected "Race" rather than "National Origin." *See Wu v. Thomas,* 863 F.2d 1543, 1547 (11th Cir. 1989). Plaintiff's potential confusion regarding the difference between "Race" and "National Origin" is irrelevant when the EEOC would conduct essentially the same investigation based on either allegation, as is the case here.

The Court faces a closer call with respect to Count III alleging discrimination under Section 760.10(5) of the FCRA. This provision prohibits discrimination against a person seeking to take an examination related to a license or other credential. Plaintiff's Charge alleges that "[a]fter a work place incident that lead [sic] to disciplinary action, I have been subject to harassment and retaliation by Mr. Brian Stamp. This harassment and retaliation led to a false allegation of cheating during my 2015 nuclear reactor operator re-qualification exam. Due to this unjust allegation, I was terminated." (DE 27-1).

The Court concludes that Plaintiff's FCRA claim is within the scope of these allegations in Plaintiff's Charge. The administrative investigation that would reasonably arise from Plaintiff's EEOC Charge would "reasonably be expected" to include an investigation into the "false allegation of cheating" during Plaintiff's nuclear reactor operation re-qualification exam. *Gregory v. Georgia Dept. of Human Resources,* 355 F.3d 1277, 1279–80 (11th Cir.2004) (noting that a plaintiff's complaint is permitted to "amplify, clarify, or more clearly focus" the allegations made by the plaintiff in an earlier administrative charge as long as they reasonably arise from the allegations). That is because the core of Plaintiff's FCRA claim is that Defendants discriminated against him

in maintaining his nuclear operator license by lying about him cheating on the exam. Accordingly, Defendants' motion to dismiss Counts II and III based on failure to exhaust administrative remedies is **DENIED.**

### C.    Dismissal of Discrimination Claims Based on the ROD

Defendants argue that all three Counts should be dismissed to the extent that they rely on the April 2015 ROD, because that disciplinary action does not constitute an "adverse action" for purposes of establishing a *prima facie* case of disparate treatment. To establish a *prima facie* case of discrimination, the Plaintiff must establish: 1) he is a member of a protected class; 2) he was subject to adverse employment action; 3) his employer treated similarly situated employees outside the class more favorably; and 4) he was qualified to do his job. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999).

Plaintiff's Amended Complaint sufficiently alleges that he suffered an adverse employment action because he was terminated.  Although Defendants may be correct that the ROD does not constitute an adverse employment action and the FPL employees identified in the Amended Complaint are not "similarly situated," the Court need not make these determinations now when Plaintiff's Amended Complaint contains sufficient allegations—though inartfully pled—to plead a *prima facie* case of discrimination.

### IV.    CONCLUSION

Consequently, for the reasons set forth above, Defendants' motion to dismiss (DE 27) is **GRANTED IN PART AND DENIED IN PART**.  To proceed in this action, Plaintiff must file a second amended complaint that removes all improper citations and complies with Federal Rules of Civil Procedure 8 and 10.

       **DONE AND ORDERED** in chambers in Miami, Florida, this 18 day of July, 2017.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE